**Elinor H. HAUSLADEN, Appellant,**

**v.**

**Victor H. HAUSLADEN, Appellee.**

**No. 16467.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 26, 1965.

Crozier, Sweet & Freeman, William W. Sweet, Jr., Dallas, for appellant.

Flannigan, Patterson & Biesel, Geo. E. Flannigan, Dallas, for appellee.

BATEMAN, Justice.

A decree of divorce was granted to the appellee Victor H. Hausladen. The wife, Elinor H. Hausladen, appeals and prays

that the decree be reversed and rendered in her favor.

Her first two points of error on appeal question appellee's qualification to bring the suit. The trial court filed findings of fact, one of which was that appellee had been a resident of the State of Texas "for a period of one (1) year prior to exhibiting his petition herein." Appellant's position under her first point of error is that this finding was insufficient as a matter of law in that it is not a finding that such inhabitancy was for the twelve months *next preceding* the filing of the petition, as required by Art. 4631, Vernon's Ann.Civ.St., citing Langford v. Langford, Tex.Civ.App., 337 S.W.2d 181. We overrule the first point for reasons which we shall now set forth in discussing the second.

■ The second point of error is that the evidence was insufficient to support the above finding. The evidence showed without dispute that the parties and their minor daughter lived together in their own home in Webster Groves, Missouri, a suburb of St. Louis, where appellee was employed as a traveling salesman. He was notified by his company that he would be transferred to the Dallas, Texas area effective January 1, 1963. He came to Dallas alone on January 6, 1963, spent that night in a motel, rented a small efficiency apartment the next day and lived in it until he purchased a home in Dallas County in April 1963. His wife and daughter remained in their home in Missouri until April 1963 when they all moved into the newly purchased Dallas County home. He left most of his personal possessions, including the family furniture and other effects, in Missouri until that time. He gave St. Louis as his residence on his 1962 income tax return filed in April 1963, and he told his wife he still considered his home and church membership to be in St. Louis. Nevertheless, it is clear from the testimony of both parties, taken as a whole, that when they learned in the fall of 1962 of his pending transfer to Dallas, they both formed the intention in good faith to make Dallas County their permanent place of abode, which intent they carried into effect as soon as could conveniently be done. The wife stayed in the Missouri home until a suitable home was purchased in Dallas County, when she placed the Missouri home on the market and sold it. In the meantime she and the daughter visited appellee for short periods in the Dallas apartment. Appellee was actually physically present in Dallas County from his arrival on January 6, 1963 until after this suit was filed on January 6, 1964, except for short, temporary absences made necessary by his work. We hold that this satisfied the requirements of Art. 4631, V.A.C.S. and accordingly overrule both of appellant's first two points of error. Warfield v. Warfield, Tex.Civ.App., 161 S.W.2d 533.

Appellant's third, fourth and fifth points of error complain: (3) that the evidence was insufficient to sustain the court's finding of unkind, harsh and cruel treatment of appellee by appellant, (4) that any such alleged acts of cruel treatment were provoked by appellee's conduct, and (5) that the alleged acts of cruelty were condoned by appellee. We think it might aid in an understanding of our discussion of these three points to quote the trial court's Findings of Fact Nos. 2 and 3:

"(2) That the parties were duly and legally married on or about September 18, 1948 and continued to live as husband and wife until on or about November 19, 1963 at which time they separated.

"(3) That Plaintiff VICTOR H. HAUSLADEN was guilty of adultery, not involving abandonment of wife and family, at a time prior to December 31, 1962; that the Defendant ELINOR H. HAUSLADEN became apprised and aware of such prior adultery during the month of October or November, 1962; that following such apprisal, Plaintiff agreed to and did discontinue his adulterous relationship and Defendant, in reliance upon Plaintiff's agree-

ment to discontinue such adulterous relationship agreed to continue the marriage relationship between the parties and forgive Plaintiff prior adultery; that thereafter, Plaintiff and Defendant continued to live as husband and wife, cohabiting together, enjoying normal marital sexual relations and reinstating the marriage relationship as it existed prior to the adulterous activity of Plaintiff; that after Defendant became apprised and aware of Plaintiff's adulterous relationship, the parties agreed to sell their home in St. Louis, Missouri where they had lived for several years, and move to Texas; that pursuant to this agreement, the parties purchased a home in Richardson, Texas which they occupied in May of 1963, and in which they continued to live and cohabit as husband and wife in a general spirit of forgiveness by Defendant of Plaintiff's prior adulterous relationship; that pursuant to Plaintiff's agreement of December, 1962 to discontinue the adulterous relationship, Plaintiff did in fact discontinue and continually refrain from any adulterous relationship and did seek by his general conduct, demeanor, and attitudes, to make amends for his prior adulterous conduct, treating the Defendant with kindness and affection; that the Defendant did, by reason of her forgiveness of Plaintiff's prior adulterous conduct, her subsequent co-habitation and continuation of the marriage relationship and her agreement not to allow her knowledge of and the prior existence of Plaintiff's adulterous conduct to interfere with the marriage relationship, forgive and condone Plaintiff's prior adulterous conduct; after such condonation by Defendant of Plaintiff's prior adulterous conduct, the Plaintiff was not guilty of any act or acts to provoke or justify the Defendant's unkind, harsh and cruel treatment toward Plaintiff; notwithstanding the absence of such provocation or justification, the Defendant was guilty of unkind, harsh and cruel treatment toward the Plaintiff which conduct by Defendant has rendered the further living together of the parties unsupportable (*sic*)."

█ Our careful review of the statement of facts persuades us that the court's Finding No. 2 and that part of No. 3 which relates to the adulterous conduct of appellee and the forgiveness and condonation thereof by appellant, are supported by the evidence. We shall now discuss the evidence with respect to the last few words of Finding No. 3, wherein the court found that appellant was guilty of unkind, harsh and cruel treatment toward appellee which rendered their further living together insupportable.

Appellee's testimony in this respect is to the effect that his wife berated him, called him a louse, accused him of doing things he was not doing, telling him he wasn't treating her right and wasn't paying enough attention to her, that he had been out with other women, and threatened to call his parents and tell them what a lousy son they had. He further testified that these outbursts affected his work and his sales volume. The record of this testimony is unsatisfactory in that it is impossible for us to determine therefrom just when all of these things occurred. It is fairly clear, however, that the conduct of which appellee complains began after appellant learned of his previous adultery. This was in December 1962 before either of the parties moved to Dallas. It also appears from the record that appellee separated from his wife in July 1963 because of her many expressions of disapproval of him and his conduct, but that shortly thereafter they became reconciled and lived together as husband and wife until their final separation on or about November 19, 1963. Appellee testified that, although his wife had agreed in December 1962 that she would forgive and forget his offense of adultery, after their reconciliation following the July 1963 separation and until their separation in November 1963,

appellant would go into fits of anger, tirades and run him down in general; that in November 1963 she told him she was going to take their daughter out of school and go back to St. Louis and register in some hotel under a false name so that he could not find her. It was undisputed that during the period from July 1963 to November 19, 1963 the parties "cohabited together" at least once or twice, the last time being in the latter part of October 1963. Appellee testified that it would be impossible for him again to live with appellant as her husband.

■ Art. 4632, V.A.C.S., provides *inter alia*, that the decree of divorce shall be rendered "upon full and satisfactory evidence." We hold that this evidence fell short of being "full and satisfactory" and was therefore insufficient to establish such cruel treatment as would constitute a statutory ground for divorce, and therefore sustain the third point of error.

■ The rule generally applicable in civil cases, that if there is any evidence to support findings of the trial court those findings are binding on the appellate court, does not apply in divorce cases because the statute authorizes divorce only when the evidence is "full and satisfactory," and this limitation must be observed by both the trial and appellate courts. Our Supreme Court held many years ago that the discretion of the trial judge in a divorce case should "be subject to revision by the appellate court, in order that the dearest rights of society may not be jeopardized by the mistakes or errors of one man." Jernigan v. Jernigan (1872) 37 Tex. 420, 421. See also Barrett v. Barrett, Tex.Civ.App., 368 S.W.2d 709, 711, wherein it was held that the statute requires the evidence to be full and satisfactory, not only to the trial judge, but also to the appellate court "in order to permit a decree to stand."

■ Where the evidence is conflicting, we have no authority to pass upon the credibility of witnesses, but it is our duty to "determine as to the quality of the evidence"

to make certain that the evidence upon which a decree of divorce is granted is "full and satisfactory." Robinson v. Robinson, Tex.Civ.App., 235 S.W.2d 228. See also Mortensen v. Mortensen, Tex.Civ.App., 186 S.W.2d 297, 304; Moon v. Moon, Tex.Civ. App., 186 S.W.2d 362; and McNabb v. McNabb, Tex.Civ.App., 207 S.W. 129, 132, where we find this significant language:

"The rule in this state, as well as in others, is that parties cannot be divorced for incompatibility, or because they live unhappily together, or merely because they possess unruly tempers, or for marital wranglings."

The fourth point is that it was error to grant the divorce because the alleged acts of cruel treatment were provoked by appellee's conduct. Appellee seems to have had no serious complaint of appellant's conduct until after she learned of his adultery. Even though she agreed to forgive and forget the adultery, and evidenced such amnesty by resuming marital relations with appellee for several months, the record conveys the definite impression that the matter was not completely erased from her consciousness and that the memory of the grievous wound to her sensibilities caused her attitude toward her husband to become less than angelic. The question now before us, however, is not whether appellant breached her agreement, or whether there was impossibility of performance thereof, or whether there was any consideration for her promise, but whether appellee's conduct provoked her acts of "cruelty". It seems clear to us that it did.

■ We think the doctrine of recrimination is applicable here. "A mutuality of misconduct indulged in by both parties to a divorce action amounts to recrimination." 20 Tex.Jur.2d, Divorce and Separation, p. 391, § 47, wherein it is also stated that recrimination generally is a bar to a suit for divorce, and that it is generally held that a person should not be allowed to recover for the wrongful act of another if his own guilt is attached thereto.

"Recrimination constitutes a valid defense where the acts or conduct of the defendant for which the plaintiff seeks a divorce were induced by or in retaliation of the plaintiff's own conduct. The plaintiff's acts must have been such as are reasonably calculated to provoke the misconduct of the defendant that is the ground for divorce, though they are not required to be of exact degree with the defendant's conduct." 20 Tex. Jur.2d, Divorce and Separation, p. 393, § 48.

This doctrine of recrimination is given full recognition in Texas. Warfield v. Warfield, Tex.Civ.App., 161 S.W.2d 533. We think these words of Chief Justice Fly of the San Antonio Court of Civil Appeals in Mansur v. Mansur, Tex.Civ.App., 37 S.W. 2d 846, are applicable here:

"If under all these circumstances the wife at times forsook the sweet conversation and humble demeanor of a saint it cannot be a marvel. * * * If she has sinned, he is in no position to cast the stones of condemnation and destruction at her."

The fourth point of error is sustained.

The fifth point is that the alleged acts of cruel treatment were condoned by appellee. While it could properly be said that those alleged acts of cruelty on the part of appellant which occurred prior to the separation and reconciliation in July 1963 were condoned by such reconciliation and cohabitation thereafter, still there is evidence of some further harassment after the reconciliation and up until the final separation on November 19, 1963, which we do not find was condoned by appellee. When a spouse is guilty of acts of cruel treatment toward the other, and such other agrees to a reconciliation and the parties cohabit together, there is a condonation of the prior wrongful acts; but if such wrongful acts continue as in the past the condoned wrongful acts are thereby revived and may be considered in determining whether a divorce should be granted. Oster v. Oster, Tex.Civ.App., 130 S.W. 265. The fifth point of error is overruled.

Appellant's sixth and last point of error is that appellee's admitted adultery was a complete defense to his suit for divorce, citing Franzetti v. Franzetti, Tex. Civ.App., 120 S.W.2d 123 and Jones v. Jones, Tex.Civ.App., 176 S.W.2d 784. We hold that under the facts shown by the record in this case the point is well taken and is sustained.

For the reasons stated the decree of the court below is reversed and judgment here rendered that appellee be denied a divorce.

Reversed and rendered.